UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

HARRY YOHE,
   Plaintiff,

      v.                                       CIVIL ACTION NO.
                                               08-10922-MBB
ERVING MARSHALL, Police Chief,
and TOWN OF TOWNSEND,
   Defendants.

                     **MEMORANDUM AND ORDER RE:**
                **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
                          **(DOCKET ENTRY # 13)**

                           **August 6, 2010**

**BOWLER, U.S.M.J.**

     Pending before this court is a motion for summary judgment brought by defendants Erving Marshall ("Marshall"), who is the Police Chief of Townsend, and the Town of Townsend ("Townsend") (collectively "defendants") against plaintiff Harry Yohe ("plaintiff").  (Docket Entry # 13).  This court held a hearing on June 8, 2010, and took the motion (Docket Entry # 13) under advisement.

                          PROCEDURAL HISTORY

     Plaintiff filed this action on May 30, 2008, alleging that defendants violated his Second Amendment right to keep and bear arms by "interfer[ing] in the rights of [plaintiff] in his contract with a municipality to secure a gun license" ("Count

One"). (Docket Entry # 1, ¶ 19). Plaintiff also asserts an abuse of process claim against Marshall for his alleged refusal to return plaintiff's guns ("Count Two"). (Docket Entry # 1, ¶ 21). Plaintiff alleges that, "Marshall refuses to return [plaintiff's] guns and possessions" seized during a purportedly illegal seizure on or about May 11, 1997. (Docket Entry # 1, ¶ 21). He also submits that, "Marshall refuses to give the guns and possessions back to [plaintiff] despite a valid court agreement." (Docket Entry # 1, ¶ 21).

## FACTUAL BACKGROUND

On the evening of May 11, 1997, Townsend police responded to a report of a domestic disturbance involving plaintiff at his residence in Townsend, Massachusetts. (Docket Entry ## 1 & 6, ¶¶ 6). On May 11 or 12, 1997, Massachusetts State Police arrested plaintiff for the reported domestic disturbance at Fort Devens in Ayer, Massachusetts. (Docket Entry ## 1 & 6, ¶¶ 8). Plaintiff later initiated a lawsuit, Harry Yohe v. William May, et. al., United States Federal District Court C.A. No. 00-10675EFH ("Yohe I"), against William May ("May"), who is the former Chief of Police in Townsend, as well as against Townsend. (Docket Entry ## 16 & 20).

In or around June 2004, plaintiff settled Yohe I with

2

Townsend and May.  Defendants in Yohe I sent a letter to plaintiff dated June 18, 2004, which accompanied a general release ("June 2004 agreement") regarding the settlement. (Docket Entry # 17, Ex. A; Docket Entry # 18, Ex. B).[1]  As evidenced by the June 2004 agreement, plaintiff received "Seven Thousand Five Hundred Dollars ($7,500), and other consideration" and in return agreed to "remise[], release[] and forever discharge[]" both Townsend and May from any "debts, demands, claims, actions, causes of action [and] suits" arising out of the events and circumstances involving the activities of the "above individuals" and "more specifically described in Harry Yohe v. William May, et. al., United States Federal District Court C.A. No. 00-10675EFH."  (Docket Entry # 17, Ex. A).

The June 2004 agreement does not address the return of guns, weaponry or other property (Docket Entry # 17, Ex. A) and Marshall has never returned the guns to plaintiff.  (Docket Entry ## 1 & 6, ¶¶ 13).  The letter accompanying the June 2004 agreement advised plaintiff that "Police Chief Erving Marshall will need documentation from [plaintiff's] municipality (I understand he is in St. Louis) indicating that [plaintiff] is

---

[1] Although the copy of the June 2004 agreement is not dated (Docket Entry # 17, Ex. A), the letter (Docket Entry # 18, Ex. B) is dated June 18, 2004.  (Docket Entry # 18, Ex. B).  Also, although the copy of the June 2004 agreement is unsigned, neither party disputes the fact that the parties settled Yohe I or that the copy is a valid representation of the settlement terms.

3

qualified to possess the particular firearms in question."[2]

(Docket Entry # 18, Ex. B).  The letter goes on to state that defendants are:

> unfamiliar with the requirements in St. Louis or the state of Missouri but if such requirements are similar to the Commonwealth of Massachusetts, then Chief Marshall will need to see a firearms identification card, and a license to carry card before he will relinquish the weaponry.

(Docket Entry # 18, Ex. B).  Defendants assert, and plaintiff does not dispute, that plaintiff has not contacted Marshall regarding the return of the guns since September 2005.  (Docket Entry # 8).

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party."  American Steel Erectors, Inc. v. Local Union No. 7, International Association of Bridge, Structural, Ornamental & Reinforcing Iron Workers, 536 F.3d 68, 75 (1st Cir. 2008).  "A fact is material if it carries

---

[2] Plaintiff does not dispute that he presently resides in Missouri.

4

with it the potential to affect the outcome of the suit under the applicable law." Id.

It is well established that:

A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  After:

a moving party makes preliminary showing, nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue" with respect to each element on which he "would bear the burden of proof at trial."

Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006). Additionally, at the summary judgment stage, "courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'"  Scott v. Harris, 550 U.S. 372, 378 (2007).

## DISCUSSION

Defendants first argue that the June 2004 agreement does not encompass the return of plaintiff's weaponry.  (Docket Entry # 14).  Although true, the complaint does not include a breach of settlement agreement claim.  Rather, it sets out an alleged violation of the Second Amendment (Count One) and an abuse of

5

process (Count Two).  Hence, the argument does not provide a basis to dismiss either count on summary judgment.[3]

With respect to Count One, defendants seek summary judgment "because the Second Amendment applies only to the federal government and not to the states." (Docket Entry # 14).  On June 28, 2010, the Supreme Court decided that the Second Amendment does in fact extend to states.  See McDonald v. City of Chicago, Ill., _U.S._, 130 S.Ct. 3020 (2010).  The McDonald Court stated:

> In Heller, we held that the Second Amendment protects the right to possess a handgun in the home for the purpose of self-defense.  Unless considerations of stare decisis counsel otherwise, a provision of the Bill of Rights that protects a right that is fundamental from an American perspective applies equally to the Federal Government and the States.  See Duncan, 391 U.S., at 149, and n. 14, 88 S.Ct. 1444.  We therefore hold that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in Heller.

Id. at 3050.

The issue therefore distills to whether the McDonald decision applies retroactively.  Understandably, neither party has addressed or had an opportunity to address this issue.  Thus, further briefing is required.

Defendants also point out that plaintiff purportedly lacks a firearms identification card ("FID") as well as a license to carry firearms ("LTC"), both of which are required of

---

[3] Defendants may renew the argument in any future dispositive motion but should concomitantly address the relevancy of the argument to the Second Amendment violation or the abuse of process claim.

6

Massachusetts residents for gun possession within the state. Defendants make this argument presumably to show that their refusal to return the guns complies with Massachusetts law and thus does not violate the Second Amendment.  Plaintiff, however, is a Missouri resident.  (Docket Entry # 18, Ex. B).  Absent a more developed argument that the statute applies and also forecloses plaintiff's right to possess the guns under the Second Amendment, the argument does not mandate summary judgment on Count One.  Put another way, defendants fail to meet their burden of demonstrating that no genuine issue of material fact exists as to Count One.

As to Count Two, Marshall maintains that the malicious prosecution claim must fail because plaintiff cannot show the first of the four elements required to establish such a claim.[4] (Docket Entry # 14).  Plaintiff, however, in both the complaint and the memorandum in opposition to summary judgment, advances an abuse of process claim.  (Docket Entry # 1, ¶ 21; Docket Entry # 20).  According to Massachusetts law, an abuse of process claim

---

[4] The four elements required for a malicious prosecution claim are:

> 1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendant; 2) the termination of a proceeding in favor of the accused; 3) an absence of probable cause for the charges; and 4) actual malice.

Nieves v. Sweeney, 241 F.3d 46, 53 (1st Cir. 2001).

"is a distinct claim from false arrest and malicious prosecution . . .." Santiago v. Fenton, 891 F.2d 373, 388 (1st Cir. 1989). The elements required for an abuse of process claim are that "[1] process was used, [2] for an ulterior or illegitimate purpose, [3] resulting in damage." Millennium Equity Holdings, LLC v. Mahlowitz, 925 N.E.2d 513, 522 (Mass. 2010).

The malicious prosecution argument therefore does not warrant summary judgment on the abuse of process claim. Since Marshall makes no argument directly against the abuse of process claim, he fails to meet his initial burden as the moving party. See Celotex Corp. v. Catrett, 477 U.S. at 323. Accordingly, summary judgment is inappropriate on Count Two.

## CONCLUSION

In accordance with the foregoing discussion, the motion for summary judgment (Docket Entry # 13) is **DENIED**. Defendants may renew the motion and, in the event they present an argument that the Second Amendment does not apply to states, defendants should address the retroactivity of the McDonald decision. The parties shall appear for a status conference on September 7, 2010, at 2:30 pm.

                                  /s/ Marianne B. Bowler
                                  **MARIANNE B. BOWLER**
                                  United States Magistrate Judge