```
              UNITED STATES DISTRICT COURT
               DISTRICT OF MASSACHUSETTS

HARRY YOHE,
      Plaintiff,


      v.                              CIVIL ACTION NO.
                                       08-10922-MBB

ERVING MARSHALL,
Police Chief, and
CITY OF TOWNSEND,
      Defendants.
```

**MEMORANDUM AND ORDER RE:**
**RENEWED SUMMARY JUDGMENT MOTION**
**(DOCKET ENTRY # 23)**

**October 14, 2010**

**BOWLER, U.S.M.J.**

Pending before this court is a renewed summary judgment motion filed by defendants Erving Marshall ("Marshall"), Police Chief of Townsend, and the Town of Townsend ("Townsend") (collectively: "defendants").  (Docket Entry # 23).  Plaintiff Harry Yohe ("plaintiff") opposes the motion.  (Docket Entry # 25).  After conducting a hearing on October 6, 2010, this court took the motion (Docket Entry # 23) under advisement.

PROCEDURAL HISTORY

The two count complaint alleges a violation of the Second Amendment in Count One and an abuse of process claim in Count Two.  Although the complaint does not refer to a violation of 42 U.S.C. § 1983 ("section 1983"), this court infers that the

statute forms the basis of the alleged violation of the Second Amendment.  The complaint does not mention or refer to the Fourth Amendment or a violation of any other constitutional right except for the Second Amendment.

As set out in the complaint, plaintiff asserts that defendants interfered with his right to bear arms and "his contract with a municipality to secure a gun license."  (Docket Entry # 1).  Plaintiff also complains that defendants never provided him with "an accounting of all guns and possessions they seized."  (Docket Entry # 1).

On August 6, 2010, this court denied defendants' first summary judgment motion on both counts.  The opinion noted that, "Defendants may renew the motion and, in the event they present an argument that the Second Amendment does not apply to states, defendants should address the retroactivity of the McDonald[1] decision."  (Docket Entry # 22).  Defendants renewed the motion (Docket Entry # 23) and presently argue that McDonald and District of Columbia v. Heller, __ U.S.__, 128 S.Ct. 2783 (2008), do not prevent them from requiring proper license(s) in order to release the weaponry.

## FACTUAL BACKGROUND

---

[1]  McDonald v. City of Chicago, __ U.S.__, 130 S.Ct. 3020 (2010).

Having recited the facts in the prior opinion (Docket Entry # 22), they are not repeated at length. Plaintiff adds an affidavit, however, that clarifies the items removed by Townsend police officers from plaintiff's then residence in Townsend, Massachusetts.

The removal of the weapons took place on May 11, 1997. That evening, "Townsend Police and Massachusetts State Police" responded to a report of a domestic disturbance involving plaintiff at his house in Townsend. (Docket Entry ## 1 & 6, ¶¶ 6). When the officers entered plaintiff's residence, they seized a number of weapons owned by plaintiff. The weapons consist of "two Chinese made SKS 7.62 mm Rifles, one Pump Action Pellet Gun, two hunting bows, an Army issued survival knife, and 7.62 mm ammunition." (Docket Entry # 25, Ex. A).

The incident led to plaintiff's arrest, a civil suit brought by plaintiff and a settlement of that suit for $7,500. Plaintiff currently resides in Fenton, Missouri.

By letter dated June 18, 2004, defendants acknowledge that they retain possession of the weaponry. The letter from defendants' counsel reflects that Marshall requires documentation of plaintiff's qualifications to carry the weapons in order to relinquish the weaponry. In pertinent part, the letter advises plaintiff that Marshall:

> will need documentation from [plaintiff's] municipality (I understand he is in St. Louis) indicating that [plaintiff]

3

>is qualified to possess the particular firearms in question. I am unfamiliar with the requirements in St. Louis or the state of Missouri but if such requirements are similar to the Commonwealth of Massachusetts, then Chief Marshall will need to see a firearms identification card, and a license to carry card before he will relinquish the weaponry.

(Docket Entry # 18, Ex. B).

## DISCUSSION

Defendants renew the summary judgment motion on the basis that although the McDonald decision held that the Second Amendment applies to the states, the decision does not prevent the ability of Marshall, Chief of Police, to require plaintiff to have the proper license(s). (Docket Entry # 23). Accordingly, they seek summary judgment on Count One.

Massachusetts law prescribes the knowing possession of "weapons without proper state licensing." Gun Owners' Action League, Inc. V. Swift, 284 F.3d 198, 202 (1st Cir. 2002); Mass. Gen. L. ch. 140, §§ 121, 129C & 131. For example, section 129C of Massachusetts General Laws chapter 140 ("chapter 140") provides that, "No person . . . shall own or possess any firearm, rifle, shotgun or ammunition unless he has been issued a firearms identification card." Section 131 of chapter 140 allows individuals with a Class A license to carry and possess "large capacity firearms" including "rifles and shotguns." Mass. Gen.

4

L. ch. 140, § 131.[2]  Individuals with a Class B license may carry and possess "non-large capacity firearms."  Mass. Gen. L. ch. 140, § 131.  The Secretary of the Executive Office of Public Safety publishes and distributes a roster "of weapons which fit the statutory definition of 'large capacity weapons.'"  Gun Owners' Action League, Inc. V. Swift, 284 F.3d at 201.[3]

Marshall is not imposing a blanket and categorical restriction on the release of plaintiff's weapons.  Rather, he is requiring that the person to whom he releases the weapons have the proper license(s).  Contrary to plaintiff's argument (Docket Entry # 25, ¶ B), Marshall's refusal to return the weaponry absent proof of the proper license(s) is not tantamount to an absolute restriction on plaintiff's right to possess firearms in his home.

It is well established that the right to bear arms "secured by the Second Amendment is not unlimited."  District of Columbia v. Heller, 128 S.Ct. at 2816.  Although the Court in Heller refrained from undertaking "an exhaustive historical analysis" of

---

[2] Plaintiff is challenging the constitutionality of Marshall's conduct.  He is not making a facial challenge to section 131.  In no uncertain terms, he states that, "The question of the constitutionality of M.G.L.A. c. 140, § 131 is not the basis of the Plaintiff's § 1983 claim."  (Docket Entry # 25).

[3] It is more than likely that at least one of plaintiff's weapons falls into the category of Class A firearms.  See http://www.state.ma.us/eops/docs/chsb/firearms.  That said, this finding is not necessary for purposes of this opinion and for making a ruling on the renewed motion.

the scope of the Second Amendment, it reaffirmed that "nothing in [the] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Id.  The list of presumptively valid laws "does not purport to be exhaustive."  Id. at 2817 n.26.

The McDonald decision applied the Second Amendment's right to bear arms to the states.  McDonald v. City of Chicago, 130 S.Ct. at 3050 (Alito, J., plurality opinion) (holding Second Amendment right applies to the states through Fourteenth Amendment).  In so doing, however, the McDonald Court reiterated the affirmation by the Court in Heller that the right to bear arms is not without restrictions.  The Court explained that:

> It is important to keep in mind that Heller, while striking down a law that prohibited the possession of handguns in the home, recognized that the right to keep and bear arms is not "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."  554 U.S., at ----, 128 S.Ct., at 2816.  We made it clear in Heller that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of firearms by felons and the mentally ill," "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Id., at . . . 128 S.Ct., at 2816-2817.  We repeat those assurances here.

McDonald v. City of Chicago, Ill., 130 S.Ct. at 3047.  Thus, incorporating the right to bear arms in the Second Amendment as a

fundamental right applicable to the states through the Fourteenth Amendment "does not imperil every law regulating firearms." Id., 130 S.Ct. at 3047.

While striking down certain laws, both Heller and McDonald reflect that "some categorical firearms bans are permissible." U.S. v. Yancey, 2010 WL 3447736, *2 (7th Cir. Sept. 3, 2010). The case at bar does not even involve a categorical or complete ban. Instead, having seized weapons in the course of an arrest, Marshall requires proof of proper license(s) to release the weapons to plaintiff or plaintiff's agent or representative. Channels exist for plaintiff to obtain the weapons. For example, a "colonel of state police" has the authority under state law to issue a temporary Class A or B license "to a nonresident." Mass. Gen. L. ch. 140, § 131F. If in plaintiff's possession, section 129C of chapter 140 exempts "[p]ossession of rifles and shotguns and ammunition therefor by nonresidents traveling in and through the commonwealth, providing that any rifles or shotguns are unloaded and enclosed in a case." Mass. Gen. L. ch. 140, § 129C(h).

It is also well settled that the violation of state law does not rise to a violation of section 1983. Furthermore, plaintiff's current residence in Missouri belies his ability at present to fall within any state statutory exemption as "the number two man in charge of Fort Devens" and "Post Command

7

Sergeant Major." (Docket Entry # 20, Ex. B). In sum, Marshall's requirement to release the weapons to a properly licensed individual does not rise to the level of a Second Amendment violation of plaintiff's right to bear arms under section 1983.[4]

Plaintiff's additional argument that defendants violated the Fourth Amendment or that Marshall's conduct was an "'arbitrary and capricious' abuse of his power" does not avoid summary judgment on Count One. The complaint nowhere states a Fourth Amendment violation or refers to arbitrary and capricious conduct, a phrase not customarily associated with the right to bear arms under the Second Amendment. Absent a motion for leave to amend the complaint and an allowance of such a motion at this late date in a 2008 case, there is no Fourth Amendment claim in this proceeding.

## CONCLUSION

In accordance with the foregoing discussion, the renewed motion for summary judgment (Docket Entry # 23) is **ALLOWED** to the extent that Count One is dismissed. Count Two remains in this

---

[4] The request for an accounting of the weapons in Marshall's possession appears moot. In any event, the failure to provide an accounting given the circumstances, including plaintiff's knowledge of what the police removed from his residence, in light of the list of removed items provided by plaintiff (Docket Entry # 25, Ex. A) is not a violation of the Second Amendment. That said, in the spirit of resolving this matter, it may behoove defendants to provide a list of the weapons they possess in the event they have not already provided one.

8

action.

                                           /s/ Marianne B. Bowler
                                          **MARIANNE B. BOWLER**
                                          United States Magistrate Judge